# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Bilal A. Al-Haqq, ) | C/A No. 2:14-CV-0008-TMC-MGB |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | REPORT & RECOMMENDATION |
| Marvin Bryant, in his individual and ) | |
| official capacity, ) | |
| ) | |
| DEFENDANT. ) | |
| ) | |

The Plaintiff brings this action under Title 42, United States Code, Section 1983.[1] The Plaintiff is currently in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Ridgeland Correctional Institution. In his Complaint, the Plaintiff brought claims against seven employees of Allendale Correctional Institute ("ACI") alleging violations under section 1983 of his Fifth, Eighth, and Fourteenth Amendment rights. (Dkt. No. 1.) The defendants filed a motion for summary judgment which was granted on January 30, 2015, as to all defendants except Marvin Bryant. (Dkt. No. 55.) With leave of the court, Defendant Bryant filed an Amended Answer on September 11, 2015. (Dkt. No. 11.) On January 25, 2016, Defendant Bryant filed Marvin Bryant's Motion for Summary Judgment. (Dkt. No. 103.) The Plaintiff responded the following day. (Dkt. No. 104.)

## FACTUAL BACKGROUND

In his verified complaint, the Plaintiff claimed that on July 12, 2013, Defendant Bryant violated his Eighth Amendment rights by using excessive force against him and wrongfully

---

[1] The Plaintiff filed his claims appearing *pro se*, but has since been appointed counsel. (Dkt. No. 65.)

1

charged him with "refusal to obey orders." (Dkt. No. 1.) The Plaintiff alleged he was charged because Defendant Bryant falsely maintained that the Plaintiff refused to take his food tray from Bryant and was kicking his cell door. Thereafter Bryant sprayed him with pepper spray directly in his face, causing him great pain. Bryant had the water to Al-Haqq's cell turned off so that he was not able to wash the spray from his face and body. Al-Haqq claimed that metal from the spray canister had to be removed from his eye. Al-Haqq also complained that another correctional officer opened his food flap to allow some fresh air into his cell after he was sprayed by Defendant Bryant, but Defendant Bryant closed the flap to prevent him from getting any air. Al-Haqq was not allowed to wash for several days and suffered greatly as a result.

Al-Haqq maintained that "at no time did [he] kick on [his] cell door." (Dkt. No. 1). According to the Plaintiff, he was never given any order to stop kicking the door. He alleged he was sprayed in the face with tear gas by Defendant Bryant out of retaliation for his having filed a grievance against Bryant and for reporting this Defendant's alleged illegal activities smuggling drugs and tobacco into the prison and allowing prisoners to fight each other. The Plaintiff was charged with refusing to obey a direct order for which he was found guilty and given 60 days of disciplinary detention.

In his affidavit, Defendant Bryant, averred that he observed Al-Haqq kicking his cell door on July 12, 2013, and behaving defiantly and aggressively towards correctional employees, including himself. (Dkt. No. 41-2.)  He ordered Al-Haqq to cease kicking the door, but Al-Haqq refused. Bryant believed Al-Haqq's actions of kicking the door could cause injury to Al-Haqq, and furthermore, could have incited upheaval among the inmates. He believed Al-Haqq could have caused physical damage to the door and its hinges creating a security issue; therefore he considered Al-Haqq to be a risk, and took actions to subdue and restrain Al-Haqq. He

"discharged a short burst of chemical munitions into Al-Haqq's cell." (*Id.*) Bryant averred that the actions taken were not excessive, but merely were employed to the extent necessary to obtain Al-Haqq's submission and compliance to correctional employees. Bryant stated that he did not act with the malicious intention to cause a deprivation of Al-Haqq's constitutional rights or other injury. Bryant asserted that he acted in accordance with prison policy to maintain discipline and to prevent Al-Haqq from destroying SCDC property.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## ANALYSIS

Defendant Bryant's Amended Answer raised the defense "that Plaintiff failed to exhaust administrative remedies prior to filing suit as mandated by 42 U.S.C. § 1997e(a)." (Dkt. No. 92.) In his motion before the court, Defendant Bryant argues he is entitled to judgment as a matter of law because the "Plaintiff failed to properly exhaust his administrative remedies." (Dkt. No. 103.) The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

3

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516 (2002); *Larkin v. Galloway*, 266 F.3d 718 (7th Cir. 2001) (exhaustion required even though the plaintiff claimed he was afraid); *see also Claybrooks v. Newsome*, 18 F. App'x 243 (4th Cir. Sept. 18, 2001) (applying *Booth v. Churner* to affirm the district court's denial of relief to the plaintiff).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." *Zander v. Lappin*, 415 F. App'x 491, 492 (4th Cir. Mar. 10, 2011) (quoting *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Id*. (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

This court takes judicial notice of SCDC's grievance policy, SCDC Policy GA-01.12. *See Malik v. Ward*, No. 8:08-cv-01886, 2010 WL 936777, at *2 n.4 (D.S.C. Mar. 16, 2010) (holding that "[t]he Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12"); *see also Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (holding that a court may "take judicial notice of matters of public record"). Both parties rely on SCDC Policy GA-01.12 and acknowledge this court may take

4

judicial notice of the policy. (Dkt. Nos. 103 & 104.)  The policy has been summarized as follows:

> After an unsuccessful attempt at informal resolution of the problem(s) by submission of a Request to Staff Member Form or by discussion of the complaint with the appropriate supervisor/staff, (1) an inmate must fill out a Form 10-5, Step 1, and give the form to an employee designated by the Warden (not the Inmate Grievance Coordinator) within fifteen days of the alleged incident; (2) the grievance must then be numbered and entered into SCDC's automated system within ten working days, and the Institutional Inmate Grievance Coordinator (IGC) notified; (3) the IGC must then, within ten working days, finalize the grievance in the system and attempt to informally resolve the issue; if the problem cannot be resolved informally, the IGC will conduct a complete investigation and make recommendations for disposition of the matter to the Warden; (4) the Warden must respond to the inmate, in writing, within forty days from the date the grievance was formally entered into the system by the IGC, then the IGC has five working days to serve the Step 1 response to the inmate; (5) the inmate may then appeal the Warden's response to the Division Director of Operations by completing a Form 10-5a, Step 2, and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (6) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal within another five "calendar days" and the Branch must present the Step 2 appeal to the responsible SCDC official, i.e. the Division Director of Operations, for a response; (7) the Division Director of Operations then has sixty days from the date the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally; (8) the IGC has five days to serve the inmate with the Step 2 response.

*McFadden v. Reynolds*, No. 3:13-cv-439-JMC-JRM, 2013 WL 1838656, at *3 n. 2 (D.S.C. April 11, 2013) (citing SCDC, Inmate Grievance System, GA-01.12, § 13.4 (Oct. 1, 2010)), *adopted* 2013 WL 1838644 (D.S.C. May 1, 2013).[2]

In the case at bar, the Plaintiff filed his Step 1 Grievance, which he labelled as an "Emergency Grievance" on the same day as the incident, July 12, 2013. (Dkt. No. 103-2.) The Plaintiff's "Emergency Grievance" contains many of the same allegations as his Complaint including that Defendant cursed him and sprayed chemical munitions in his face at point blank

---

[2] Both parties cite to *McFadden* as a summary of SCDC Policy GA-01.12. (*See* Dkt. Nos. 103 & 104.)

range, that he was denied prompt and sufficient medical treatment, and that he was ignored for five hours after being sprayed. (*Id*.) SCDC declined to process the Emergency Grievance on August 12, 2013, because Plaintiff did not attach a Request to Staff Member form in "an effort to informally resolve" the matter. (*Id*.)

Following the filing of the "Emergency Grievance" but before receiving SCDC's denial, the Plaintiff filed a Request to Staff Member on July 29, 2013. (Dkt. No. 103-2 at 3.) The Plaintiff then filed another Step 1 Grievance on August 21, 2013 which was denied after an investigation by the Warden. (Dkt. No. 103-2 at 4.) The Plaintiff filed a Step 2 Grievance on August 25, 2013. SCDC responded to the Step 2 Grievance approximately two years later on April 30, 2015. (Dkt. No. 104-6.)

A genuine issue of material fact exists as to whether the Plaintiff exhausted the grievance process, and this court recommends the Defendant's motion be denied. *See Hill v. Haynes*, 380 F. App'x 268, 273 (4th Cir. 2010) (holding that "genuine issues of material fact concerning the exhaustion of administrative remedies…preclude summary judgment"). The Defendant argues that the Plaintiff's "Emergency Grievance" did not comply with SCDC Policy GA-01.12 because it did not contain a Request to Staff Member. (Dkt. No. 103-1 at 5.) However, SCDC Policy GA-01.12 does not require a Request to Staff Member form. According to the *McFadden* court, a Step 1 grievance may be filed "[a]fter an unsuccessful attempt at informal resolution of the problem(s) by submission of a Request to Staff Member Form or by discussion of the complaint with the appropriate supervisor/staff…." *McFadden v. Reynolds*, No. 3:13cv-439-JMC-JRM, 2013 WL 1838656, at *3 n. 2. The Plaintiff's "Emergency Grievance" contained a space instructing the Plaintiff to "specify how and when informal resolution was attempted by grievant." (Dkt. No. 104-1 at 1.) The Plaintiff responded that he "spoke with Sgt. Cohen and

6

Sgt. DeLoach concerning the situation. 'SMU do not have any Inmate Requests as we were informed by Sgt. Cohen and Ofc. Chaney.'" (*Id.*) The Plaintiff's response tends to show that the Plaintiff discussed his grievance with two staff members in an attempt to resolve the situation in compliance with SCDC Policy GA-01.12.

Additional evidence that the Plaintiff exhausted the grievance process exists in the Step 2 Grievance. The Step 2 Grievance was signed on April 30, 2015 by the Inmate Grievance Coordinator ("IGC") and the Plaintiff. Directly above the IGC's signature and the Plaintiff's signature, the grievance stated the following:

> The decision rendered by the responsible official exhausts the appeal process of the Inmate Grievance Procedure. I hereby acknowledge receipt of the official's response and understand this is the Agency's final response to this matter.

(Dkt. No. 104-6.) The official response denying his Step 2 Grievance addressed the merits of his grievance and did not state anything about the lack of a Request to Staff Form or timeliness. (*Id.*) Evidence in the record exists to support that the Plaintiff exhausted the administrative remedies available to him, and this court recommends the Defendant's motion be denied.

## CONCLUSION

Wherefore, it is RECOMMENDED that Marvin Bryant's Motion for Summary Judgment (Dkt. No. 103) be DENIED.

IT IS SO RECOMMENDED.

February 8, 2016

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

7

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).